UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILDA KALANI,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 13-cv-04591-KAW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>Re: Dkt. Nos. 14 & 23 |

Plaintiff Ilda Kalani seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court grants Plaintiff's motion for summary judgment, denies Defendant's cross-motion for summary judgment, and remands the case for further proceedings consistent with this order.

## I. BACKGROUND

On September 1, 2010, Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") Benefits. Administrative Record ("AR") 19, 79, 123-126. On September 3, 2010, Plaintiff also filed a Title II application for a period of disability and disability insurance benefits. AR 19, 78, 116-22. Plaintiff alleges a disability onset date of March 30, 2009. AR 116, 123. Plaintiff's claims were initially denied on April 18, 2011. AR 82-88. Plaintiff filed a Request for Reconsideration in May 2011. AR 89. Plaintiff's Request for Reconsideration was denied on July 1, 2011, and Plaintiff filed a Request for Hearing on August 26, 2011. AR 90-94, 98-99. A hearing was held before Administrative Law Judge Thomas J. Gaye on June 14, 2012. AR 62.

Plaintiff is forty-six years old. AR 116. She has one minor child and is not currently married. AR 66. Plaintiff reported that she was hit in the right eye with a rock at the age of twelve and subsequently lost all vision in that eye. AR 231. She has also had decreasing vision in her left eye since the age of thirteen or fourteen years old for which she has undergone two surgeries in an attempt to arrest the deterioration. AR 22, 165, 231. Plaintiff indicated that she stopped working as a housekeeper in 2008 because she went to Mexico to care for her mother and has not worked since her return because she is unable to find work. AR 231.

Three physicians have offered medical evidence in regards to Plaintiff's disability. Plaintiff underwent a consultative examination with Dr. Harrup Kaur, M.D., a board certified ophthalmologist. AR 231-35. Dr. Kaur reported that Plaintiff had no light perception in her right eye. AR 231, 233. Dr. Kaur also reported that Plaintiff's left eye has a distance visual acuity of 20/60 with glasses and near visual acuity of 20/40. *Id.* He also noted that it would be unlikely that Plaintiff's vision would improve with surgery. AR 233. With respect to the left eye, Dr. Kaur noted that she is status-post retinal detachment repair with scleral buckle. *Id.* He also opined that this resulted in loss of superior field vision with extensive scarring of inferior retina, which cannot be regained and that she was at risk of further vision loss with recurrence of retinal detachment. *Id.* Dr. Kaur also noted that Plaintiff has a limited upgaze, left hypotropia, and Blepharitis, but noted that it could be treated with medications. *Id.*

On August 3, 2011, Plaintiff's treating optometrist, Jorge A. Cuadros[1], O.D., completed a Vision Impairment Residual Functional Capacity Questionnaire. AR 247-49. Dr. Cuadros observed that Plaintiff had no light perception or vision in her right eye and 20/70 visual acuity in her left eye after best correction. AR 247. He also noted that Plaintiff has gradually reduced central vision in left eye. *Id.* Dr. Cuadros also checked a box stating that Plaintiff is not capable of avoiding ordinary hazards in the workplace, which included examples of boxes on the floor, doors ajar, and approaching people or vehicles. *Id.*

On February 15, 2011, Dr. Lillie A Mosaddegh, M.D., an ophthalmologist, performed a

---

[1] Plaintiff erroneously asserts that the correct spelling of her treating physician is "Quadros." (Pl.'s Mot. at 5.) A review of the record confirms the correct spelling is "Cuadros." AR 246, 247, 249.

1   consultative examination. AR 228-30.  Dr. Mosaddegh reported that Plaintiff had no vision in her

2   right eye and a visual acuity of 20/150 in her left eye with best possible correction. AR 229.

3         David L. Hicks, M.D., a state agency physician, reviewed the record and observed that

4   Plaintiff had monocular vision with decreased acuity and field of vision in the left eye. AR 243.

5   Dr. Hicks calculated Plaintiff's visual field efficiency at 52.8%, visual acuity efficiency at 70%,

6   and visual efficiency at 39.6%. *Id.*  After considering the medical evidence as well as Plaintiff's

7   activities of daily living, Dr. Hicks opined that Plaintiff was unable to read print smaller than that

8   commonly found in children's books, and must avoid even moderate exposure to hazards. *Id.*  Dr.

9   A. Nasarabadi, M.D., reviewed and agreed with Dr. Hicks's assessment. AR 244-45.

10        In a decision dated June 27, 2012, the ALJ found that Plaintiff was not disabled. AR 19-24.

11  On July 16, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 14.

12  On September 24, 2012, Plaintiff submitted additional evidence to the Appeals Council. AR 214-

13  25.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council

14  denied review on August 2, 2013. AR 1-3.  Plaintiff now seeks judicial review of the

15  Commissioner's decision pursuant to 42 U.S.C. § 405(g).

16        On March 5, 2014, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt.

17  No. 14.).  On May 9, 2014, Defendant filed its opposition and cross-motion for summary

18  judgment. (Def.'s Opp'n, Dkt. No. 23.)  Plaintiff did not file a reply, so the motion is fully

19  briefed.

## II.  LEGAL STANDARD

21      A court may reverse the Commissioner's denial of disability benefits only when the

22  Commissioner's findings are 1) based on legal error or 2) are not supported by substantial

23  evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097

24  (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a

25  preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to

26  support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In

27  determining whether the Commissioner's findings are supported by substantial evidence, the

28  Court must consider the evidence as a whole, weighing both the evidence that supports and the

evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since March 30, 2009, the alleged onset date. AR 21. At step two, the ALJ found that Plaintiff had the severe impairments of blindness in the right eye and decreased vision in the left eye. *Id.* At

4

step three, the ALJ concluded that Plaintiff's visual acuity was 20/60 with glasses, and her visual field efficiency was 52.8%, resulting in a visual efficiency of 36.96%. AR 22. As a result, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 21-22. At step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as a house cleaner at all exertion levels but with certain nonexertional limitations due to her monocular vision with decreased acuity and field of vision in the left eye. AR 22-23.  These limitations are the inability to read print smaller than that commonly found in children's books, inability to drive, and the need to avoid all exposure to hazards. *Id.*

In support of his finding that Plaintiff could her perform past relevant work, the ALJ noted that Plaintiff was able to care for her six-year-old son on her own, cook, clean, perform all other household tasks, and appeared to have a full life with friends, family, and church. *Id.*  The ALJ also observed that Plaintiff reported working as a housecleaner until she had to return to Mexico to care for her sick mother and since her return she has been unable to find work. *Id.*  Thus, Plaintiff does not allege she lost her previous position due to her disabling condition, and the ALJ concluded that despite Plaintiff's severe vision loss, her reported daily activities simply do not show that she is unable to work. *Id.*  The ALJ concluded that this finding was supported by the testimony of the vocational expert, who testified that the work could be performed even with poor vision. AR 24.  Therefore, Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## IV. DISCUSSION

Plaintiff makes four arguments in her motion for summary judgment:  (1) that the Appeals Council had a duty to consider the newly submitted evidence; (2) that the medical evidence does not support the ALJ's decision; (3) the ALJ's adverse credibility determination as to Plaintiff is not supported by any reference to the evidence; and (4) the ALJ denied Plaintiff's right to a full and fair hearing. (*See* Pl.'s Mot. at 5-10.)

The Court will address each argument in the order of the five-step evaluation.  There is no dispute that Plaintiff is not currently engaged in a substantial gainful activity nor is there dispute

5

that Plaintiff has a medically severe impairment. Therefore, the analysis proceeds to step three to determine whether this impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).

### A. The medical evidence does not conclusively support the ALJ's decision, and the ALJ did not provide specific legitimate reasons supported by substantial evidence in rejecting medical opinions to the contrary.

Plaintiff argues that the medical evidence does not support the ALJ's decision. (Pl.'s Mot. at 5-7.) While some evidence supports the decision, the ALJ failed to acknowledge that there were conflicting medical opinions, and that one of the opinions would result in a finding that Plaintiff had an impairment severe enough to warrant an award of benefits at step three.

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes among the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three types are classified as follows: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Id.* at 830. Generally, more weight should be given to the opinion of the treating physician than to the opinion of doctors who do not treat the claimant. *Id.* The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor and, if contradicted, only for specific legitimate reasons supported by substantial evidence. *Id.* Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

The ALJ failed to acknowledge that the medical opinions were not entirely consistent. The medical evidence from all three examining physicians corroborate that Plaintiff has a vision impairment, but they differ in terms of the severity of that impairment. All three physicians found Plaintiff to have no vision in her right eye. AR 229, 231, 247. Dr. Kaur's and Dr. Cuadros assessed Plaintiff with a visual acuity after best possible correction in her left eye at 20/60 and 20/70, respectively. AR 231, 247. Dr. Mosaddegh assessed Plaintiff's visual acuity at 20/150. AR 229. In addition, Dr. Cuadros opined that Plaintiff should avoid ordinary hazards such as boxes on the floor, doors ajar, and approaching people or vehicles. AR 248. This medical opinion conflicts

6

with the nonexamining physician opinion of Dr. Hicks who determined that Plaintiff merely needed to avoid moderate exposure to hazards. AR 180.  Thus, while all of the physicians agree that Plaintiff's eyesight is impaired, they differ in their assessments of the severity.

Furthermore, the conflicting objective medical evidence regarding the extent of Plaintiff's impairment is significant, because accepting Dr. Mosaddegh's opinion at step three would have resulted in a finding that Plaintiff met or equaled a listed impairment under 20 C.F.R. § 404 subpart P, Appendix 1.[2]  Instead, the ALJ found that Plaintiff's impairment was not severe enough to meet or equal a listed impairment without addressing that there was a significant difference in medical opinion. AR 21-22.

Additionally, in failing to acknowledge the difference in opinion, the ALJ did not explain why he apparently rejected the opinions of Dr. Cuadros and Dr. Mosaddegh.  When an ALJ fails to properly reject a treating or an examining physician's medical opinion, that medical opinion must be accepted as true.  *Pierce v. Astrue*, 382 F. App'x 618, 619-20 (9th Cir. 2010)(reversed district court affirming ALJ's decision that provided no explanation for why he rejected an examining physician's findings).  In *Pierce*, The examining physician opined that the claimant was limited to standing/walking for two hours out of an eight hour workday, and, therefore, could only perform sedentary work.  *Id.* at 619.  The ALJ, however, found that the claimant retained an RFC to perform unskilled work with a sit/stand option without explaining why he rejected the

---

[2] Under section 2.03, a visual efficiency percentage of 20 or less will meet or exceed a listed impairment.  *See* U.S. SOC. SEC. ADMIN., DISABILITY EVALUATION UNDER SOCIAL SECURITY: 2.00 SPECIAL SENSES AND SPEECH - ADULT, *available at* http://www.socialsecurity.gov/disability/professionals/bluebook/2.00-SpecialSensesandSpeech-Adult.htm#2_02 (last visited Feb. 19, 2015). Visual efficiency is calculated by multiplying the visual acuity efficiency and visual field efficiency percentages. *Id.*  The last value shown in Table 1 is a best corrected central visual acuity of 20/100.  This corresponds to a value of 50%.  Prior versions of the listing included lower vision values. *See* U.S. SOC. SEC. ADMIN., DI 34122.05 SPECIAL SENSES AND SPEECH LISTINGS FROM 05/24/02 TO 07/08/04 (2005) [hereinafter 2005 Listing], *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0434122005.  For the purposes of this motion, the court assumes that the visual field efficiency percentage used by the ALJ of 52.8% is accurate. AR 22.  Dr. Mosaddegh found that Plaintiff's visual acuity was 20/150. AR 229. While the 2005 Listing's Table 1 does not contain a precise acuity percentage for 20/150, it states that 20/125 is 40%, and 20/160 is 30%. In fact, 20/150 constitutes a visual acuity value of 32%. Jack T. Holladay, *Visual Acuity Measurements,* 30 J. Cataract & Refractive Surgery 287, 288 (2004).  By multiplying the presumed 52.8% visual field efficiency and 32% visual acuity, Plaintiff's visual efficiency is 16.9%, which falls below the 20% threshold and constitutes an impairment severe enough to award benefits at step three.

7

physician's sedentary limitation. *Id.* The ALJ's failure to explain the deviation fell "far short of providing clear and convincing reasons" and required that the physician's opinion be treated as true. *Id.* (citing *Lester v. Chater*, 81 F.3d at 830).

Similarly, here, the ALJ did not provide any reason for rejecting the medical opinion of Plaintiff's treating physician, Dr. Cuadros, or the opinion provided by examining physician Dr. Mosaddegh. As provided above, the ALJ instead made a blanket assertion that the findings of Dr. Kaur were "generally consistent with a vision impairment questionnaire provided by Jorge A Cuaudros [sic] . . . ." AR 23. As one of Plaintiff's treating physicians, Dr. Cuadros's opinion was entitled to special consideration, including consideration of the factors listed under 20 C.F.R. § 404.1527(c). *Delegans v. Colvin*, 584 F. App'x 328, 331 (9th Cir. 2014) (citing *Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007). It is impossible to conclude from the administrative record whether the ALJ considered the 20 C.F.R. § 404.1527 factors, because he did not discuss those factors explicitly, and the factors appear to weigh in favor of some deference, given Dr. Cuadros's extended treatment of Plaintiff. *See Delegans*, 584 F. App'x at 331. Further, the ALJ's decision omits Dr. Cuadros's opinion that Plaintiff is not capable of avoiding ordinary hazards in the workplace, such as boxes on the floor, doors ajar, and approaching people or vehicles. AR 248. Furthermore, despite Dr. Mosaddegh's diagnosis that Plaintiff's visual acuity is 20/150, the ALJ concluded that this eye exam "also found the same limitations" as those opined by Dr. Cuadros and Dr. Kaur. This is, in fact, incorrect, as Dr. Mosaddegh's opinion would result in Plaintiff being awarded benefits at step three.

Generally, the ALJ's failure to provide adequate reasons for rejecting the medical opinions requires that they be accepted as true. *Lester*, 81 F.3d at 834 (citing *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir. 1989)).[3] The challenge here, however, is that there are two opinions that were ignored, and adopting the findings would produce different results. Dr. Cuadros's assessment would not satisfy step three, and require proceeding to step four, while Dr. Mosaddegh's

---

[3] That there is evidence in the record that could justify a rejection of those medical opinions is immaterial. *See Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000) (physician's opinion to be accepted as true even if there was evidence that could have been used to reject it).

8

assessment would automatically result in an award of benefits. Both, however, recognize that Plaintiff has limitations concerning her ability to avoid hazards. Since the medical opinions conflict as to whether her impairment meets or equals the severity of one of the listed impairments, the Court cannot reverse the ALJ's finding at step three, but must instead remand for further proceedings. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1107 (9th Cir. 2014).

### B. The ALJ erred by failing to identify which portions of Plaintiff's testimony were not credible and for failing to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony.

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir.2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints; general findings are insufficient. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff argues that the ALJ's adverse credibility determination as to Ms. Kalani is not supported by any reference to the evidence. To the contrary, the ALJ offered the following reasons to discredit Plaintiff's testimony: (1) Plaintiff did not allege that she lost her position due to her disabling condition but instead quit working in order to return to Mexico to care for her sick mother; (2) Plaintiff is able to care for her six-year-old son, cook, clean, and perform all household tasks; (3) Plaintiff appears to have a full life with friends, family, and church. AR 23.

Even if the ALJ identifies the specific testimony he finds not credible, in order to reject a claimant's subjective complaints, an ALJ must give "specific, cogent reasons for the disbelief."

9

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Without affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. *See id.*; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ resolves questions of credibility and conflicts in the testimony. *See Yuckert v. Bowen*, 841 F.2d 303, 307 (9th Cir.1988). Accordingly, the Court will individually address below each reason the ALJ used to discount Plaintiff's testimony.

### 1. Plaintiff's Reason for Leaving Former Employment

In support of discrediting Plaintiff's testimony, the ALJ noted that she terminated her prior employment as a housekeeper because she had to return to Mexico to care for her mother. AR 23. Plaintiff stated that she worked in her former housekeeping position from February 1990 until March 31, 2009. AR 146. Further, Plaintiff testified that she had been reprimanded in the past for not cleaning the rooms properly, because she could not see. AR 73-74. Plaintiff's condition alone, however, did not cause her to quit working.

Defendant cites *Bruton v. Massanari*, 268 F.3d 824 (9th Cir. 2001), in support of its argument that this is sufficient reason to discredit Plaintiff. (Def.'s Opp'n at 6.) *Bruton*, however, is factually distinct. In *Bruton*, the claimant's testimony at the administrative hearing was that he was laid off, while his disability application alleged that he stopped working because of "lower back pain, pain in his left arm, left shoulder, left leg, and left foot." 268 F.3d at 826, 828. Further, in *Bruton,* the ALJ gave additional reasons to reject his testimony regarding subjective pain, namely that he waited nine months to seek any medical treatment despite his complaints of severe pain. *Id.* at 828. Thus, the ALJ provided specific, cogent reasons to reject the claimant's testimony. *Id.*

Here, however, the ALJ does not refer to any inconsistency in Plaintiff's statements that is analogous to the inconsistency in *Bruton*. While inconsistencies undoubtedly exist in the administrative record, the Court need not determine whether they were legally sufficient to discredit Plaintiff, since the ALJ's failure to articulate them in his credibility determination is enough to reject his judgment that Plaintiff's reason for leaving her former employment undermines her credibility.

### 2. Plaintiff's Activities of Daily Living

The ALJ cites to Plaintiff's ability to care for her six-year-old son, cook, clean, and perform all household tasks as reasons that undermine Plaintiff's claim that she can no longer work. AR 23.  Although the ALJ concedes that Plaintiff has severe vision loss, he asserts that her reported activities simply do not show that she is unable to work. *Id.*

Daily activities may form the basis for an adverse credibility finding where the plaintiff's activities: (1) contradict her other testimony; or (2) meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (certain activities of daily living may be the basis for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  The Ninth Circuit recognizes, however, that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* at 639.  The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her capability as to her overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Plaintiff's statements have consistently acknowledged that she is able to perform activities that are required for daily living. *See* AR 66-67, 124, 160.  The performance of these activities of daily living, however, may not meet the threshold of transferable work.  Plaintiff indicated that she is able to "clean around a bit . . . [s]lowly," make sandwiches for her six-year-old, buy foods that go in the microwave, and wash clothes using a washing machine. AR 66-67.

Plaintiff's statements acknowledging her ability to complete household activities do not contradict her testimony that she is unable to work.  Moreover, the ALJ never explains how these household activities demonstrate transferability to the more grueling environment of the workplace, specifically motel housekeeping.  Thus, the ALJ's assertion that Plaintiff's activities of daily living undermine her credibility is not clear and convincing.

### 3. Plaintiff's Social Life

Another reason to discredit Plaintiff's testimony is that she appears to have a "full life."

*Id.* at 23. Specifically, the ALJ states "[s]he appears to have a full life, with friends, family, and church." *Id.* The ALJ cites to a function report completed by Plaintiff as support for this statement. *Id.* In that report, Plaintiff wrote that she "walk[s] talk[s]" with others, attends church every week, and checked a box indicating that she does not have any problems getting along with family, friends, or neighbors. *Id.* at 162-63.

Claimants do not need to be utterly incapacitated to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Since Plaintiff's social life is a "daily activity," it could have formed the basis for an adverse credibility finding if it was contradicted by her other testimony or met the threshold for transferable work skills. *Orn*, 495 F.3d at 639.

As to the first consideration, Plaintiff's statements regarding her social life have been consistent. AR 67, 162-63. As to the second, that Plaintiff talks with friends and attends church once a week are not transferable work skills to professional housekeeping. Moreover, the ALJ did not explain how he determined that Plaintiff's "full life" means that her testimony should be discredited.

In light of the foregoing, the ALJ improperly discredited Plaintiff's testimony, because he failed to identify any sufficient evidence to undermine the claimant's subjective complaints.

**C. The Appeals Council Considered the Evidence Plaintiff Submitted.**

Plaintiff argues that the Appeals Council had a duty to consider the written assessment by vocational expert Scott Simon that refuted the ALJ's vocational expert's testimony, along with her appeal to the Appeals Council. (Pl.'s Mot. at 5.) There is no indication, however, that the Appeals Council did not consider the evidence. Indeed, the report was made part of the administrative record, so it must have been considered.

In the written assessment, Mr. Simon differentiated between activities of daily living and work-like activities. AR 220. For example, Plaintiff may be able to clean her own house, since she is familiar with the layout and has discretion as to when and where she cleans, the sequencing of her cleaning, and the pacing of cleaning. *Id.* Professional cleaners, however, "must be able to see the changes in each environment and have the visual discrimination necessary to work rapidly and with specified employer deadlines." *Id.* Taking this differentiation into account, Mr. Simon

12

1    opined that Plaintiff "would not . . . be a viable candidate for this job as it is performed in the labor

2    market." *Id.* Additionally, Mr. Simon opined that the job functions required visual acuity beyond

3    what Plaintiff possesses, which directly contradicts the ALJ's assessment and the vocational

4    expert's testimony at the administrative hearing that Plaintiff's past relevant work could be

5    performed with low vision. AR 24, 220.

6        In its opposition, Defendant argues that Mr. Simon's "opinion on whether [Plaintiff] could

7    perform [the work] in a 'satisfactory fashion' or whether a particular employer would hire her is

8    immaterial" under 20 C.F.R. § 404.1566(c). (Def.'s Opp'n at 9.) This is incorrect, as Subsection

9    (c) only provides that a person is not disabled if you are unable to get work. Indeed, pursuant to §

10   404.1566(b), "[w]ork exists in the national economy when there is a significant number of jobs (in

11   one or more occupations) **having requirements which you are able to meet with your physical**

12   **or mental abilities** and vocational qualifications." (Emphasis added.) Cleanliness standards are

13   different when professionally cleaning a motel room. For example, the work must be performed at

14   a much faster pace; the cleaner must navigate any number of potential hazards; and be able to

15   identify what needs to be cleaned, dusted, etc. As provided above, Plaintiff testified that she had

16   been reprimanded for not cleaning the rooms properly, because she could not see well enough to

17   adequately clean the rooms. AR 24, 73-74. Therefore, if Plaintiff is unable to adequately perform

18   the job requirements of a professional housekeeper due to her low vision, she satisfies step four,

19   and would be disabled under the Social Security Act unless other work exists in the national

20   economy that she is able to perform with her low vision. *See* 20 C.F.R. § 404.1566(b).

21       Notwithstanding, the Court's finding that the ALJ erred at step three necessitates remand.

22   Thus, regardless of whether the Appeals Council considered the newly submitted evidence, the

23   Commissioner shall consider the Mr. Simon's report on remand.

24   **D. Remand for a new administrative hearing**

25       While remand is required, it is only proper to remand for an immediate award of benefits

26   if:

27           (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must

28           be resolved before a determination of disability can be made, and (3)

> it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (citations omitted); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). As provided above, the difference in medical opinion at step three requires the case be remanded for further proceedings rather than for an awarding of benefits. *See* discussion *supra* Part IV.A.

Specifically, the ALJ erred in discrediting significant evidence at step three, and in his residual functional capacity ("RFC") determination at step four. *See Delegans v. Colvin*, 584 F. App'x 328, 333 (9th Cir. 2014). The ALJ did not proceed to step five. Therefore, the Court remands for a new hearing to determine whether Plaintiff's visual impairment is severe enough to satisfy step three of the five-step sequential evaluation. If it is, then there should be an award of benefits. If not, the rest of the sequential evaluation must be performed. If a vocational expert is required, Defendant will utilize a different vocational expert— one who is familiar with the vision requirements for professional housekeepers.

Remand is not an opportunity to correct the original decision's deficiencies outlined above in an attempt to justify the original result. *See* discussion *supra* Part IV.B. Specifically, the ALJ should not attempt to further discredit Plaintiff's testimony regarding the severity of her symptoms. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398-99 (9th Cir. 1988) ("Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from 'reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result.'")

///
///
///
///
///
///
///

14

## V. CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment is GRANTED, and this action is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings, including a new administrative hearing, consistent with this order. Defendant's cross-motion for summary judgment is DENIED.

The Clerk of the Court shall close this case.

IT IS SO ORDERED.

Dated: March 18, 2015

KANDIS A. WESTMORE
United States Magistrate Judge